## Park Fire Clay Co. *v.* Ott Bros., Appellants.

*Contract—Paving brick—Borough—Inspection—Agent.*

Where a brick manufacturer agrees with a paving contractor to furnish bricks of a kind stipulated by the borough in the paving contract, and subsequently, after a dispute about the quality of the bricks furnished, the manufacturer enters into an agreement with the borough authorities that an inspector shall be appointed, the inspector becomes his agent, and he cannot complain that the inspector threw out bricks as bad, which were in fact good.

Argued Nov. 2, 1894.   Appeal, No. 232, Oct. T., 1894, by defendants, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1893, No. 515, on verdict for plaintiff.   Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.   Reversed.

Assumpsit to recover money alleged to be due under contract for paving bricks.   Before McCLUNG, J.

564 PARK FIRE CLAY CO. *v.* OTT BROS., Appellants.

The contract in suit, Exhibit No. 1, was as follows, dated Aug. 4, 1892, signed by plaintiffs and accepted by defendants:

" We will furnish you from nine to ten hundred thousand No. 1 paving brick, on board cars at Uniontown, Pa., for $12.50 per one thousand, and guarantee 57 to lay a yard of pavement."

Some 219,000 bricks were delivered and unloaded at Uniontown. Not having been paid for, this suit was brought to recover the price of those bricks, and damages for loss on the balance of the contract. There were 50,000 that were delivered on board the cars which were not accepted and were taken back by plaintiffs.

Defendants proposed to prove by J. Q. Van Swearingen, to be followed by other witnesses, that prior to the acceptance by defendants of the writing, Exhibit No. 1, the borough of Uniontown, Pennsylvania, had in contemplation the improvement of certain streets, Fayette street and others, and with that end in view called for samples and bids of different manufacturers of vitrified brick, among others from plaintiff; that plaintiff presented to councils a sample of fire brick proposed by said company to be furnished for the improvement of said streets, and gave to councils the price at which they would be delivered; that councils adopted the fire brick of plaintiff as brick to be used in the improvement of said streets, and ordered all bidders on the street improvements to bid upon the basis of using the fire brick of the plaintiff, and that this fact was known to the plaintiff; that the plaintiff company assured the authorities of the borough that the fire brick to be furnished for the improvement of the streets aforesaid should be in all respects similar to the sample furnished to the borough at the time that the brick of the plaintiff company was adopted by the borough authorities as the brick to be used in the improvement of the streets, and further, that they were in all respects to conform to the specifications made by the borough authorities with the contractor, and subject to the inspection of the borough authorities, as provided for in the contract between the contractor and the borough; that shortly after these arrangements were entered into between the plaintiff company and the borough of Uniontown bids were called for by the borough from contractors for the making of the improvements aforesaid, and defendants, among others, bid for the work upon the

basis of procuring the fire brick of the plaintiff, according to the terms and conditions agreed upon between plaintiff and the borough authorities; that prior to the making of the bid by defendants to the borough, it was distinctly understood and agreed between plaintiff company and defendants that the brick to be furnished by plaintiff should in all respects conform to the requirements of the borough authorities and be subject to their inspection, as provided in the contract between the contractor and the borough authorities; that about July 19, 1892, defendants were notified by the borough that their bid had been accepted by it, and thereupon defendants notified plaintiffs to ship the brick to be used in that contract; that the contract was reduced to writing, and dated July 20, 1892, that is, the contract between defendants and the borough; that the paper, Exhibit No. 1, offered in evidence by plaintiff in this case, was merely for the purpose of a guaranty upon the part of plaintiff that 57 of his brick would lay a yard of pavement, and to determine the times when the brick were to be paid for, and did not contain the whole of the contract, but the contract was as hereinbefore mentioned in this offer: This to be followed by evidence that the brick delivered by plaintiffs were not such bricks as they had agreed with the borough authorities should be delivered for the purpose of making the improvements upon the streets of the borough for which the contract was subsequently entered into between the borough and defendants in this case; that the rejection of the 50,000 was because said brick were not according to the contract, and was made by the inspector and proper authorities of the borough.

By Mr. McMullen: We object to the offer. (1) Because the contract between plaintiff and defendants that was reduced to writing Aug. 4th, shows for itself what the contract between them was. (2) That the offer does not tend to show that at the time of the making of the contract in writing on Aug. 4th, there was any contemporaneous agreement or parol agreement made that was not put in the paper. (3) That the offer does not tend to show that plaintiff was present at the time of the making of the agreement between the borough and defendants, or had any knowledge of its contents or knew anything about it. (4) That there are no allegations or proof of any fraud, accident or mistake in making this agreement. (5) As generally incompetent and irrelevant.

By the Court: As I understand the offer, it is to modify the written agreement by parol. If there is any offer to show that there were brick delivered under another agreement outside of that agreement, that is, that any of these brick were delivered under another agreement, we will receive it, but as the matter now stands and with our present understanding of it, we sustain the objection and seal a bill for the defendants. [2]

Defendants then proposed to prove that, at the time the sample brick was presented by Warren, the agent of plaintiffs, at councils, he represented and explained the sample brick to be a No. 1 vitrified paving brick, and broke the brick, some of the samples, explaining why it was a No. 1 vitrified paving brick; that he knew that the brick adopted by the councils must of necessity be used by the paver or the party getting the contract for the improvement; that he was present when the contract was awarded to Ott Bros. for the use of the brick, being the same meeting of councils. This, for the purpose: First, of meeting any allegations on the part of plaintiff in this case that a light colored brick or a brick differing as to the amount of burning and color from the sample, is a No. 1 vitrified paving brick. Secondly, for the purpose of showing that the brick meant by the contract sued upon in this case was a brick of the description of the sample. Objected to as irrelevant and incompetent.

The Court: The plaintiff admits that the sample in evidence was made by them, and furnished by their agent. That of itself is a representation that they could make brick as good as that one is, and hence affords evidence that any brick of a lower grade than that is not No. 1 brick. The transactions between Warren, plaintiff's agent, and the council, cannot go beyond this; Warren's declarations outside of these declarations made to the members of council are not evidence. We, therefore, sustain the objection. Bill sealed for defendants. [3]

Mr. Ferguson: We propose to show by Charles Ott, that, at the time of the making of the paper-agreement, all of the items of the agreement between plaintiff and defendants were not incorporated in that agreement, but in addition to what is therein expressed it was agreed and understood that the brick to be furnished by plaintiff to defendants were brick that were to be satisfactory to the council of Uniontown, and were to be

such brick as would be accepted by the city councils under the terms of the contract between Ott Bros., defendants in this case, and the borough of Uniontown. Objected to as incompetent and irrelevant. Objection sustained and exception. [4] The court charged in part as follows:

" I should say further, gentlemen, that there is one aspect of the case in which, even if some of these bricks that were thrown out were fit bricks for use, the plaintiff would not be entitled to pay for them. [If Mr. Park made an agreement there that an inspector should be put on and that whatever bricks that were not fit should be thrown out, then he would be bound by it; but it would not follow from the mere fact that the inspector threw the bricks out that he would be bound by it. If good bricks were thrown out by the inspector, then he would be entitled to pay for them.] [1] He, of course, could make a bargain by which he would be bound absolutely by the judgment of the inspector. If he had agreed to submit to the judgment of the inspector and take back whatever bricks the inspector would not pass, then, as a matter of course, he would be bound by it, but I recollect no testimony that goes to that extent. The testimony in the case is to the effect that it was agreed, he denying this allegation of course, that an inspector should be put on there, and that he would not claim for the bad bricks. But if he made the arrangement for an inspector with the borough councils,. or some of them, and after the inspector had thrown out these bricks he put them into the hands of Mr. McCormick, as is alleged by the testimony, for sale, then that was a receiving back of these brick. It was a rescission of the contract, so far as they were concerned; and whether they were good or bad, he would not be entitled to pay for them. It would be just the same, practically, as these cars that went to Johnstown. They were first shipped there and then shipped away. The plaintiffs could not recover for them even if they were good brick; and so, even if they allowed the inspector to throw out these brick and then put them into the hands of Mr. McCormick for sale, of course they could not recover for them."

Verdict and judgment for plaintiff for $3,500.

*Errors assigned* were (1) instruction as above, quoting it; (2–4) ruling on evidence, quoting the bills of exception.

*J. S. Ferguson* and *J. H. White, E. G. Ferguson* with them, for appellants.

*Lewis McMullen, Wm. G. Guiler* with him, for appellees, cited: Jackson v. Payne, 114 Pa. 67; Martin v. Berens, 67 Pa. 459; Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519.

OPINION BY MR. JUSTICE FELL, Jan. 7, 1895:

By the terms of the contract entered into by the parties to this action the plaintiffs were to furnish the defendants with nine hundred thousand paving bricks at an agreed price and of a stipulated quality and size. The action was to recover for one hundred and seventy thousand bricks furnished and accepted, and for the loss sustained by the refusal of the defendants to receive the balance. The contract called for "No. 1 paving bricks," and the main contention at the trial was as to the quality of the bricks tendered.

The bricks were to be used in paving streets in Uniontown, and the contract should be considered as having been made with reference to that use and to the previous action of the borough authorities upon the subject. Before awarding the contract for paving the streets, the borough council procured from a number of manufacturers samples of paving bricks with the prices at which they would be furnished, and finally selected those made by the plaintiffs as best adapted to their purpose; and the contract for paving made with the defendants required the use of these bricks. When the plaintiffs entered into the contract with the defendants to furnish bricks they knew that the contract for paving called for the use of their bricks, and that the selection of these was based upon the samples furnished by them to the borough authorities. A street committee represented the borough in the supervision of the work and had the power, conferred by the paving contract, to determine finally between the defendants and the borough all questions as to the quality of the work done. Differences arose between this committee and the plaintiffs as to the bricks furnished. It was alleged that the plaintiffs, after receiving complaints from members of the committee, agreed with them that an inspector should be appointed. This was denied by the plaintiffs, and in commenting upon the issue of fact thus raised the learned

judge used the language which constitutes the first assignment of error. The whole charge upon this point should however be considered in explanation of the part excepted to. It was said : " If Mr. Park made an agreement there that an inspector should be put on and that whatever bricks were not fit should be thrown out, then he would be bound by it ; but it would not follow from the mere fact that the inspector threw the bricks out, that he would be bound by it. If good bricks were thrown out by the inspector, then he would be entitled to pay for them. He of course could make an agreement by which he would be bound absolutely by the judgment of the inspector. If he had agreed to submit to the judgment of the inspector and take back whatever bricks the inspector would not pass, then as a matter of course he would be bound by it, but I recollect no testimony that goes to that extent. The testimony in the case is to the effect, he denying the allegation of course, that it was agreed that an inspector should be put on there and that he would not claim for the bad bricks." The instruction was in effect that if the plaintiffs agreed with the committee for the appointment of an inspector not expressly clothed with power to bind them by his decision, and he in disregard of his duty threw out good bricks, they would not be bound by his action. The only question to be considered is whether this was correct.

The contract to pave the streets was between the defendants and the borough. The contract to furnish bricks was between the defendants and the plaintiffs. These contracts were distinct and independent, and did not together constitute a tripartite agreement which gave the borough any right of action against the plaintiffs. The plaintiffs might have stood upon their contract rights and refused to deal with any one but the party to whom they were responsible. They however did not do this. Upon complaints of the quality of the bricks they were furnishing, made directly to them by the borough authorities, they visited Uniontown and conferred with the street committee. The purpose of the conference was to reach a mutual understanding as to the subject of dispute. Each party had an interest in doing this. The borough would thus secure, without dispute or litigation with its contractor, the bricks for which it had stipulated. The plaintiffs, as indicated by the

testimony, were moved by a desire not to have the reputation of their bricks injured by their rejection; and another motive to be gathered from the relation of the parties was the moral obligation arising from the fact that the selection by the borough of the bricks to be used was based upon the samples which they had furnished. Whatever the interest or the motive, at this point these parties attempted the adjustment of the dispute between them concerning the quality of the materials which the defendants were required to buy of one and use for the other. If they agreed upon this the defendants were relieved of responsibility with regard to it.

If an inspector was appointed by agreement it must be assumed that he was to represent both parties in making an inspection. Otherwise the agreement would have been senseless. The committee was at liberty to inspect without the assent of any one. That was its right, and as between the borough and the contractor it had the power to determine finally what bricks should be used. An inspection in the interest of either party would have effected nothing, and the desired end—a settlement of the question as to what bricks should go into the pavement—could be reached only by an inspection by some one who represented both. There was nothing else to agree about. If then the inspector represented the plaintiffs as well as the borough, his inspection, however unjust or unwise, determined what bricks the defendants were to use. If the parties by agreement had jointly made an inspection, the committee would have been estopped from afterward asserting that the bricks selected as fit for use were in fact unfit; and the plaintiffs likewise would have estopped themselves from making any claim for bricks rejected, for the reason that they had by their own act determined what were good and what were bad, and led the defendants to use the one and reject the other. The act of their joint agent would have the same effect, and as fully as if he had been expressly clothed with power to bind them by his decision. While the dispute between the committee and the plaintiffs lasted, the defendants were left to their own judgment. They were bound by their contracts on the one hand to use the plaintiffs' bricks and on the other to use only such bricks as were satisfactory to the committee, and the responsibility of selection rested with them. When however these parties agreed as to the quality of the

bricks a new course was marked out for the defendants. Before, the test to which they were held was the use of a No. 1 brick. Now it became a brick which had passed inspection, and they were not required to use any other.

The case was carefully and ably tried by the learned judge, and the charge and answers to points clearly and fully presented the issue involved. We find no error in the record except in the portion of the charge which we have considered. Testimony of what had occurred between the plaintiffs and the borough authorities before the awarding of the contract was admitted, but with a limitation to show the quality of the bricks to be furnished. Holding the opinion we have expressed as to the effect of an agreement to appoint an inspector, we think that upon a retrial this testimony should be admitted in full as bearing upon that question.

The first assignment of error is sustained, the judgment is reversed and a venire de novo awarded.